UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| USA STAFFING SERVICES, LLC<br><br>                     Plaintiff,<br><br>-against-<br><br>YDC, INC. d/b/a REZI<br><br>                     Defendant. | Case No. 23-cv-8613 (LGS) |

## DECLARATION OF IVONNE ORJUELA

IVONNE ORJUELA hereby declares:

1) I am the Payroll/Billing Manager of the Plaintiff, USA Staffing Services, LLC ("USA Staffing"), and make this in support of USA Staffing's Motion for Summary Judgment against Defendant YDC, Inc. d/b/a/ Rezi ("Rezi.").

2) I make this Declaration based on my own personal knowledge and the business records of USA Staffing, as set forth herein.

### Creation and Custody of Business Records

3) In my capacity as Payroll/Billing Manager, I am familiar with the record keeping practices of USA Staffing, including its procedures and practices related to accounting for the time and other charges of temporary or contract employees of USA Staffing ("USA Employees"), the billing of such charges to its customers such as Rezi, and the accounting for payments received with respect to such charges.

4) I maintain care and custody of the business records relating to the relationship between USA Staffing and Rezi, including the records of the Billing System and the contracts, agreements, and correspondence involving USA Staffing and Rezi.

5) USA Staffing uses computer systems to retain its business records, including a computerized time and billing system (the "Billing System") to account for the time records of USA Employees, the approval of USA Employees' time and work by Rezi, the billing of the charges for the USA Employees to Rezi, and the collection of payments from Rezi.

6) The time records, approvals, billing, and collection records entered into the Billing System, as well as the other business records attached to this Declaration, were all made by persons with firsthand knowledge of the events recorded, at or about the time of the events recorded, and it was the regular practice of USA Staffing to make such records, which records were made and kept in the regular course and conduct of USA Staffing's business operations.

7) The documents attached as Exhibits 1 to 7 hereto are all either accurate copies of USA Staffing's business records or reports generated by the Billing System accurately reflecting the business records setting forth the transactions reflected therein.

## **THE CONTRACT**

8) On or about June 17, 2021, USA Staffing and Rezi entered into a Staffing Terms and Conditions Agreement (the "Contract"), a copy of which is attached hereto as Exhibit 1.

9) As provided for in the Contract, Rezi entered into a number of "Assignment & Bill Rate Summary" ("ABRS") agreements for certain job classifications, copies of which are attached hereto as Exhibit 2.

10) During the course of the relations between the parties, Rezi would from time to time direct in writing the payment of bonuses to USA Employees, changes in the compensation rates for USA Employees and the reimbursement of expenses incurred by USA Employees.

11) Pursuant to the Contract, the ABRS's, and the written directions from Rezi, USA Staffing hired and employed certain individuals as USA Employees, which it assigned to Rezi on a temporary or contract basis.

12) For each week that a USA Employee was assigned to Rezi, that employee would electronically enter the time he or she worked into the Billing System through an app on his or her personal mobile phone or other device.

13) After submission of the USA Employee's time, the USA Employee's manager at Rezi would approve the USA Employee's time electronically through the Billing System.

14) Occasionally, if there were questions or discrepancies about the time submitted, the Rezi manager would reject the USA Employee's time submission, with instructions for correction. In these cases, the Rezi manager would approve the USA Employee's time after resubmission.

15) All time submitted by each USA Employee and billed to Rezi was approved by a Rezi manager, either initially or after resolution of questions.

16) On a weekly basis, USA Staffing would render invoices to Rezi for the time and other charges for each USA Employee for the prior week.

17) Each invoice rendered by USA Staffing to Rezi included a "Timesheet Details" report showing the hours submitted by the USA Employee, the date and time when those hours were submitted by the USA Employee, and the name of the Rezi manager who approved the hours, with the date and time of such approval.

18) Where there was additional correspondence or information relating to a particular invoice, such as approval of incentive bonuses, it would also be attached to the invoice.

19) Each invoice from was e-mailed to Bryan Tureaud, the CFO of Rezi, as well as to "finops@rezi.co."

20) Representative samples of unpaid invoices rendered by USA Staffing to Rezi, including their transmittal e-mails, are attached hereto as Exhibit 3. Copies of all unpaid invoices have been produced by USA Staffing to Rezi's counsel.

21) The Billing System can produce an "Invoice Register Report", which lists all invoices rendered by USA Staffing to Rezi, the dates and amounts of such invoices, and the amounts collected and unpaid balances with respect to such invoices. A copy of an Invoice Register Report reflecting all invoices rendered to Rezi is attached hereto as Exhibit 4.

22) As reflected in the Invoice Register Report, over the course of the relationship between USA Staffing and Rezi, USA Staffing rendered 279 invoices to Rezi in the aggregate invoiced amount of $3,158,342.36.

## ABSENCE OF NOTICE OF INVOICE DISPUTES

23) Under the Contract, Rezi "must provide written notice within ten (10) calendar days of the date of the invoice with any disputes, or the full amount of the invoice shall be deemed not disputed, accepted and payable." (Exhibit 1, ¶ 9).

24) If Rezi had a dispute over any invoice rendered by USA Staffing, as Time/Billing Manager, I would have received notice of such a dispute.

25) I have never received written or other notice of a dispute over an invoice rendered by USA Staffing to Rezi, other than time and billing questions resolved prior to the rendering of the invoice.

26) I have reviewed the correspondence between USA Staffing and Rezi, and located no notice disputing any invoice rendered by USA Staffing to Rezi.

27) I am informed that Rezi was required to provide initial disclosures in this action identifying the documents and information that it may use to support its claims and defenses, and that it made no such disclosures.

28) Based on the foregoing, other than time and billing questions resolved prior to the rendering of the invoice, Rezi never provided USA Staffing with any notice of any disputes with respect to any of the invoices rendered by USA Staffing to Rezi.

## COLLECTIONS FROM REZI

29) During the course of the relationship between USA Staffing and Rezi, Rezi would make payments for outstanding invoices through electronic transfers to USA Staffing's bank.

30) When a payment was received from Rezi, USA Staffing would receive a notification of the amount received and the invoices against which the invoices were paid. Copies of representative samples of such notifications are attached hereto as Exhibit 5.

31) The payments received and the invoices to which they were to be applied were recorded in USA Staffing's Billing System, which would credit the payments against the applicable invoices.

32) The Billing system can produce an "Cash Receipt Report", which lists all payments received by USA Staffing from Rezi, the dates and amounts of such payments, and the invoices to against which they were to be credited. A copy of a Cash Receipt Report reflecting all payments received by USA Staffing from Rezi is attached hereto as Exhibit 6.

33) As reflected in the Cash Receipt Report, over the course of the relationship between USA Staffing and Rezi, USA Staffing received payments from Rezi in the aggregate amount of $2,454,260.75.

34) As the aggregate amount from USA Staffing to Rezi was $3,158,342.36 and USA Staffing received payments from Rezi totaling $2,454,260.75, Rezi has a net unpaid balance in the amount of $704,081.61.

## **INTEREST CHARGES ON REZI'S ARREARS 2023**

35) Under the Contract: "All invoices are due <u>net thirty (30) days</u>. Invoices will be considered in default after twenty-four (24) calendar days of net terms, unless payment in full has been received. Invoices in default will be charged interest on unpaid balances at the rate of 1.5% per month, unless prohibited by law, in which case, the interest rate shall be the maximum allowed by law." (Exhibit 1, ¶ 9).

36) Thus, invoices that remained unpaid more than 54 days after being rendered would be considered in default and subject to interest at the rate of 1.5% per month (18% per year).

37) From the beginning of the parties' relationship in mid-2021 through the end of 2022, Rezi generally paid all invoices prior to their going into default after 54 days.

38) However, starting in early 2023, Rezi began to delay payments and to allow invoices to go into default.

39) Although USA Staffing continued to receive payments from Rezi, the invoice balance in default grew over the course of 2023.

40) The Billing System can produce an "Accounts Receivable Aging Report", as of a particular date that lists invoices with remaining unpaid balances rendered by USA Staffing to Rezi as of such date, and the amounts of such unpaid balances by the number of days past the invoice date. Complete of the Accounts Receivable Aging Reports as of February 28, 2023, March 31, 2023, and April 30, 2023, as well as the "Aging Total" summary charts from the

Accounts Receivable Aging Reports as of the last day of May 2023 through January 2024 are attached hereto as Exhibit 7.

41) For this Motion, USA Staffing has computed the interest due by using the Accounts Receivable Aging Report for the end of each month from February 2023 through January 2024 to find the total balance of invoices in arrears 60 or more days past the invoice date, and computing the interest due for the month as 1.5% of over-60 day balance such balance. The following chart shows the monthly over-60 day balances and the monthly interest amount for that month.

| Month | Amount over 60 days | Monthly Interest amount |
|---|---|---|
| 2/28/2023 | $25,320.00 | $379.80 |
| 3/31/2023 | $17,976.00 | $269.64 |
| 4/30/2023 | $7,836.00 | $117.54 |
| 5/31/2023 | $32,810.00 | $492.15 |
| 6/30/2023 | $188,008.00 | $2,820.12 |
| 7/31/2023 | $362,979.34 | $5,444.69 |
| 8/31/2023 | $469,673.94 | $7,045.11 |
| 9/29/2023 | $544,979.81 | $8,174.70 |
| 10/31/2023 | $642,392.01 | $9,635.88 |
| 11/30/2023 | $700,308.81 | $10,504.63 |
| 12/31/2023 | $704,081.61 | $10,561.22 |
| 1/31/2024 | $704,081.61 | $10,561.22 |
| Total Interest Accrued as of 1/31/2024 | | $66,006.71 |

As shown on the chart, a total of $66,006.71 has accrued through January 31, 2024. Because no further invoices are being issued, the over-60 day balance will remain at $704,081.61 for each month subsequent to January 2024 until the balance is paid, so additional interest will continue to accrue on the outstanding balance of $704,081.61 at the rate of $10,561.22 per month. (*See* Exhibit 7).

WHEREFORE, for the reasons set forth herein, in the exhibits hereto, in the accompanying Memorandum of Law, Statement of Undisputed Material Facts, and Declarations

of Matthew Kolinski, Mark Curtiss, and William J. Geller, Plaintiff USA Staffing Services, LLC, respectfully requests that this Court grant summary judgment against Defendant YDC, Inc. d/b/a Rezi and award (1) damages for unpaid invoices in the amount of $704,081.61; (2) pre-judgment interest in the amount of $66,006.71 though January 31, 2024, plus interest accruing in the amount of $10,561.22 per month thereafter; (3) attorneys fees in an amount not less than $20,361.00 to be determined in a post-judgment motion; and (4) such other relief as may be just and proper.

I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.

Executed at Tampa, Florida

March 6th, 2024

_____
IVONNE ORJUELA