UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                            :
USA STAFFING SERVICES, LLC,                                 :
                                      Plaintiff,            :
                                                            :         23 Civ. 8613 (LGS)
                 -against-                                  :
                                                            :         OPINION & ORDER
YDC, INC. d/b/a REZI,                                       :
                                      Defendant.            :
------------------------------------------------------------X

LORNA G. SCHOFIELD, District Judge:

Plaintiff USA Staffing Services, LLC brings this action alleging that Defendant YDC, Inc. d/b/a REZI failed to pay invoices for services provided by Plaintiff, resulting in a breach of the parties' contract and an account-stated claim. Plaintiff moved for pre-discovery summary judgment on all claims, and Defendant opposed the motion. For the reasons stated below, Plaintiff's motion is granted.

I.   BACKGROUND

The following facts are drawn from the parties' statements pursuant to Federal Rule of Civil Procedure 56.1 and other submissions on this motion. The facts are undisputed unless otherwise noted or are based on record evidence drawing all reasonable inferences in favor of Defendant as the non-moving party. *See N.Y. State Teamsters Conf. Pension & Ret. Fund v. C&S Wholesale Grocers, Inc.*, 24 F.4th 163, 170 (2d Cir. 2022).

On June 17, 2021, the parties entered into a contract (the "Contract") pursuant to which Plaintiff would provide Defendant with employees on a temporary or contract basis. The Contract stated that these employees would provide Defendant with time records each week for Defendant's approval and that Defendant would be billed weekly with payment due to Plaintiff within 30 days. These invoices, if not paid within 24 days of the payment due date, would be

considered in default and would begin accruing interest. Defendant agreed to provide written notice within ten days of the invoice of any disputes or the invoices would be considered undisputed, accepted and payable. If a dispute arose over payment, the prevailing party would be entitled to attorneys' fees and costs.

Over the course of the parties' relationship, Plaintiff submitted 279 invoices to Defendant. The total amount due was $3,158,342.36, of which Defendant paid $2,454,260.75. In 2023, a dispute arose between Defendant and its lenders that caused Defendant a cash-flow interruption. Beginning in early 2023, Defendant did not pay certain of Plaintiff's invoices fully or on time. Plaintiff claims that these invoices entered default and began accruing interest as prescribed by the Contract. Defendant disputes that these invoices should be considered in default.

The parties attempted to negotiate a resolution for payment of the outstanding invoices but were unable to agree on Defendant's arrears. During these negotiations, Plaintiff continued to provide services to Defendant but withdrew its employees from their assignments with Defendant on September 26, 2023. On September 29, 2023, Plaintiff filed this action.

## II.  LEGAL STANDARD

Summary judgment is appropriate when the record establishes that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[1] *Frost v. N.Y.C. Police Dep't*, 980 F.3d 231, 242 (2d Cir. 2020). "Only disputes over facts that might affect the outcome of the suit under the

---

[1] Unless otherwise indicated, in quoting cases, all internal quotation marks, footnotes and citations are omitted, and all alterations are adopted.

governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *accord Saleem v. Corp. Transp. Grp., Ltd.*, 854 F.3d 131, 148 (2d Cir. 2017). Federal Rule of Civil Procedure 56 "does not impose an obligation on a district court to perform an independent review of the record to find proof of a factual dispute." *Amnesty Am. v. Town of W. Hartford*, 288 F.3d 467, 470 (2d Cir. 2002); *accord Razzano v. Remsenburg-Speonk Union Free Sch. Dist.*, No. 20-3718, 2022 WL 1715977, at *3 (2d Cir. May 27, 2022) (summary order).

In evaluating a motion for summary judgment, a court must "construe the record evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *Torcivia v. Suffolk County*, 17 F.4th 342, 354 (2d Cir. 2021). "Summary judgment is improper if there is any evidence in the record that could reasonably support a jury's verdict for the non-moving party." *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286 (2d Cir. 2002); *accord Rodriguez v. City of New York*, No. 21 Civ. 1384, 2023 WL 2368985, at *2 (S.D.N.Y. Mar. 6, 2023). "The moving party bears the burden to demonstrate the absence of any genuine issues of material fact." *New York v. Mountain Tobacco Co.*, 942 F.3d 536, 541 (2d Cir. 2019). "[W]here a movant has shown the existence of a material fact and the nonmovant wishes to challenge it, the nonmovant bears the burden of production to point to significant probative evidence (that is, more than a scintilla of evidence) from which a reasonable factfinder could find for the nonmovant." *Gov't Emps. Ins. Co. v. Mayzenberg*, 121 F.4th 404, 413-14 (2d Cir. 2024) (quoting *Anderson*, 477 U.S. at 252), *unrelated certified question accepted*, No. 129, 2024 WL 5131318 (N.Y. Dec. 17, 2024). "Demonstrating that such issues exist requires the nonmovant to do more than simply show that there is some metaphysical doubt as to the material facts." *McKinney v. City of Middletown*, 49 F.4th 730, 738 (2d Cir. 2022). The nonmovant cannot

merely "deny the moving party's allegations in a general way," but instead "must present competent evidence that creates a genuine issue of material fact." *Id.*

At trial, the defendant bears "[t]he burden of proof to establish an affirmative defense." *Red Tree Invs., LLC v. Petróleos de Venezuela, S.A.*, 82 F.4th 161, 171 (2d Cir. 2023). If "the party opposing summary judgment bears the burden of proof at trial, summary judgment should be granted if the moving party can point to an absence of evidence to support an essential element of the nonmoving party's claim." *Gemmink v. Jay Peak Inc.*, 807 F.3d 46, 48 (2d Cir. 2015). While the court draws all inferences in favor of the nonmoving party, "the opposing party must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Id.*

New York law applies to the claims, which arise out of state law. The Contract contains a New York choice of law provision, and the parties cite cases applying New York law. "[S]uch implied consent is sufficient to establish the applicable choice of law." *Trikona Advisers Ltd. v. Chugh*, 846 F.3d 22, 31 (2d Cir. 2017).

## III.   DISCUSSION

### A.   Rule 56(d)

As a threshold matter, summary judgment is appropriate now despite Defendant's argument that additional discovery is required. Under Federal Rule of Civil Procedure 56(d), "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition," a court may defer consideration of the motion, allow time to obtain declarations or take discovery or may issue any other appropriate order. A nonmovant resisting summary judgment on the ground that it needs discovery in order to defeat the motion must submit an affidavit showing "(1) what facts are sought and how they are to be

obtained, (2) how those facts are reasonably expected to create a genuine issue of material fact, (3) what effort affiant has made to obtain them, and (4) why the affiant was unsuccessful in those efforts." *Meloff v. N.Y. Life Ins. Co.*, 51 F.3d 372, 375 (2d Cir. 1995); *accord Kinney v. Pub. Consulting Grp., LLC*, No. 23-676-CV, 2024 WL 3717315, at *4 (2d Cir. Aug. 8, 2024) (summary order). "Binding precedent makes unmistakably clear that [a nonmovant's] failure to file a Rule 56(d) affidavit is fatal to his claim, even if he alluded to a claimed need for discovery in a memorandum of law or some other filing." *Kinney*, 2024 WL 3717315, at *4 (quoting *Gurary v. Winehouse*, 190 F.3d 37, 43-44 (2d Cir. 1999)).

Here, Defendant argues in opposition to summary judgment that additional discovery is needed to determine whether disputes of fact exist regarding both the breach of contract and account-stated claims. But Defendant's supporting affidavits do not include the statements necessary to invoke Rule 56(d). Defense counsel's affidavit focuses on Defendant's lack of funds and communications with Plaintiff regarding settlement. The affidavit states generally that Defendant "requests an opportunity to conduct discovery to defend itself in this scurrilous and wasteful lawsuit." The affidavit includes no explanation of what facts may be sought, how those facts may be obtained or why those facts would prevent summary judgment. As Defendant has not satisfied the requirement of Rule 56(d), Defendant may not rely on the lack of discovery to oppose summary judgment.

Defendant's memorandum of law states that Defendant would seek discovery regarding "[t]he parties' conduct beyond the four corners of the Contract." Even if Defendant had made that statement as part of a proper Rule 56(d) affidavit, discovery or deferral of this motion is not warranted because that conduct is legally irrelevant, as explained below. Defendant also states that it wants discovery regarding the discussions between the parties' respective Chief Executive

5

Officers and relevant emails to obtain information about Defendant's alleged acceptance of the invoices and Plaintiff's continuation of staffing after the alleged initial default. As this evidence is related to the parties' unsuccessful negotiations to resolve these claims, this evidence would not be admissible under Federal Rule of Evidence 408(a)(1) "to prove or disprove the validity or amount of [Plaintiff's] claim." Furthermore, Defendant does not need discovery to present evidence of its own conduct. For example, if Defendant had objected to Plaintiff's invoices, Defendant could have submitted an affidavit saying so, but Defendant did not.

### B. Count One: Breach of Contract

Summary judgment is granted to Plaintiff on the breach of contract claim under New York law, Count One of the Complaint. Defendant's failure to pay the undisputed invoices constitutes a breach of contract, and that breach is not otherwise excused.

#### i. Standard

Under New York law, breach of contract requires that "(1) a contract exists; (2) [the moving party] performed in accordance with the contract; (3) [the opposing party] breached its contractual obligations; and (4) [the opposing party's] breach resulted in damages." *34-06 73, LLC v. Seneca Ins. Co.*, 198 N.E.3d 1282, 1287 (N.Y. 2022). In a contract action, the court's general objective should be to "determine . . . the intention of the parties . . . from the language employed" by the contract. *Hartford Accident & Indem. Co. v. Wesolowski*, 305 N.E.2d 907, 909 (N.Y. 1973); *accord Flynn v. McGraw Hill LLC*, 120 F.4th 1157, 1164 (2d Cir. 2024) (New York law). The meaning of an unambiguous contract is a question of law for the court. *See Ezrasons, Inc. v. Travelers Indem. Co.*, 89 F.4th 388, 396 (2d Cir. 2023) (New York law). A contract is ambiguous if its "relevant language is capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire

integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business." *Flynn*, 120 F.4th at 1165.

"Where the terms of a contract are clear and unambiguous, the intent of the parties must be found within the four corners of the contract," and "[t]he words and phrases used by the parties must . . . be given their plain meaning." *Ellington v. EMI Music, Inc.*, 21 N.E.3d 1000, 1003 (N.Y. 2014); *accord Flynn*, 120 F.4th at 1165. In that scenario, the court determines the contract's meaning "without considering extrinsic evidence of the parties' intent, such as their course of dealing." *Flynn*, 120 F.4th at 1166. A party may not introduce extrinsic evidence "with regard to an unambiguous contract in order to vary the plain meaning of the writing, or to increase a party's obligations where those obligations were explicitly outlined in the contract itself." *Id.* The contract should be read holistically, "with every part interpreted with reference to the whole in order, inter alia, to give effect to its general purpose, to safeguard against adopting an interpretation that would render any individual provision superfluous, and to ensure that particular words and phrases do not receive undue emphasis." *Id.* at 1165-66 (emphasis omitted).

    ii. **Elements**

Two elements of the breach of contract claim are easily satisfied. Neither party disputes the first element, that a contract exists. The fourth element, causation, is also satisfied; Plaintiff has established that Defendant's non-payment caused Plaintiff monetary damage, and Defendant does not argue otherwise.

No issue of fact precludes summary judgment on the second element, that Plaintiff performed in accordance with the Contract. Plaintiff rendered services by providing workers to Defendant and regularly submitting timesheets and bills for their work. Defendant asserts that

Plaintiff failed to provide written notice of Plaintiff's termination of the Contract as required. Assuming Defendant is correct, the requirement that Plaintiff provide written notice of termination does not defeat Plaintiff's breach of contract claim. "Under New York law, a party's performance under a contract is excused where the other party has substantially failed to perform its side of the bargain or, synonymously, where that party has committed a material breach." *Process Am., Inc. v. Cynergy Holdings, LLC*, 839 F.3d 125, 136 (2d Cir. 2016); *accord Envy Branding, LLC v. William Gerard Grp., LLC*, No. 20 Civ. 03182, 2024 WL 869156, at *14 (S.D.N.Y. Feb. 29, 2024) (New York law). Defendant's failure to pay the invoices is a material breach because that failure goes "to the root of the agreement between the parties." *Envy*, 2024 WL 869156, at *14. Any breach by Plaintiff of the requirement that notice of termination be provided in writing is excused. Even if Defendant's breach were only a partial and not a material breach, Plaintiff's breach would likewise not be material because Plaintiff had substantially performed by providing the staffing services as required by the Contract. Partial breaches do not excuse a separate breach by the other party. Instead, "both parties may be guilty of breaches, each having a right to damages." *Process Am., Inc.*, 839 F.3d at 137. Defendant has filed no counterclaim for breach of contract, has shown no damage from the lack of written notice and does not argue that Plaintiff's breach somehow excuses its own prior breach.

Defendant also argues that Plaintiff never sent a notice of default. The Contract, unlike many others, does not require a notice of default. Specifically, the Contract's Section 9, governing default, states, "Invoices will be considered in default after twenty-four (24) calendar days of net terms, unless payment in full has been received." Default occurs automatically by operation of contract after a specified period of non-payment; no notice of default is required.

The undisputed evidence also shows the third element -- that Defendant breached its contractual obligations to pay Plaintiff.  Section 9 of the Contract states:

> Customer will be billed weekly for the total hours worked.  *All invoices are due net thirty (30) days*.  *Invoices will be considered in default after twenty-four (24) calendar days* of net terms, unless payment in full has been received.  Invoices in default will be charged interest on unpaid balances at the rate of 1.5% per month, unless prohibited by law, in which case, the interest rate shall be the maximum allowed by law.  Customer agrees to pay the balance due, accrued interest, lien filing fees and reasonable attorneys' fee and costs of collection.  At time of account default, USA will notify Employee(s) of the end of their assignment(s) and payroll will cease immediately.  Once payment has paid in full, it will be at USA's sole discretion to restart the USA Employee(s) assignment(s) with Customer and resume payroll.  *Customer must provide written notice within ten (10) calendar days of the date of the invoice with any disputes*, or the full amount of the invoice shall be deemed not disputed, accepted, and payable by the Customer.

(Emphasis added).  This provision unambiguously requires Defendant to give Plaintiff written notice of any dispute with an invoice within ten days of the invoice date; if no dispute is raised, the invoice is deemed accepted and payable.  Defendant was obligated to pay the accepted invoices within thirty days, or before default occurred at fifty-four days.  Defendant does not dispute that it failed to pay the full amount invoiced for the services provided by Plaintiff under the Contract.  Defendant also does not assert that it ever provided written notice of a dispute regarding an invoice within the contractual ten-day period.  Defendant therefore breached Section 9 of the Contract by failing to pay the undisputed invoices.

### iii.  Course of Dealing

Defendant argues that its failure to pay should not be considered a breach because the parties' course of dealing revised the Contract such that Defendant was permitted to object orally to Plaintiff's invoices, and discovery might reveal that Defendant did so.  The Contract contains a no-modification clause in Section 18: "No amendments or modifications to this Agreement shall be binding on any of the parties unless such amendment or modification is in writing and

9

executed by all of the parties to this Agreement." Defendant has not proffered any admissible evidence that the Contract was modified such that oral objections were acceptable.

Section 18 also states, "No term, provision, or clause of this Agreement shall be deemed waived and no breach excused, unless such waiver or consent shall be in writing and executed by all of the parties to this Agreement." This provision is enforceable under New York law. *See* N.Y. Gen. Oblig. Law § 15-301; *Israel v. Chabra*, 906 N.E.2d 374, 380 (N.Y. 2009) (Contracts containing "no oral modification" clauses are enforceable and "commonly preclude oral modification of the agreement in which they appear."); *accord Tantaros v. Krechmer*, 115 N.Y.S.3d 673, 673 (1st Dep't 2020). Defendant has provided no evidence of any written modification, waiver, consent to or forgiveness of Defendant's non-payment. Defendant admits that no resolution or agreement was reached during the parties' 2023 discussions. No material issue of fact precludes a finding on summary judgment that Defendant breached Section 9 of the Contract.

### iv. Force Majeure

Defendant argues that its non-payment should be excused under the force majeure clause in Section 27 the Contract, which states in part, "None of the parties will be responsible for failure or delay in performance of this Agreement if the failure or delay is due to labor disputes, strikes, fire, riot, war, terrorism, acts of God, or any other causes beyond the control of the nonperforming party." This provision does not apply for three reasons.

First, "New York law requires courts to construe force majeure clauses narrowly, so that only if the force majeure clause specifically includes the event that actually prevents a party's performance will that party be excused." *JN Contemp. Art LLC v. Phillips Auctioneers LLC*, 29 F.4th 118, 124 (2d Cir. 2022) (emphasis omitted). Catchall beyond-the-control language is also

10

construed narrowly. *Id.*; *Kel Kim Corp. v. Cent. Mkts., Inc.*, 519 N.E.2d 295, 296-97 (N.Y. 1987). "The principle of interpretation applicable to such clauses is that the general words are not to be given expansive meaning; they are confined to things of the same kind or nature as the particular matters mentioned." *Kel Kim Corp.*, 519 N.E.2d at 296-97. The record evidence does not show that Defendant's failure to pay due to a dispute between Defendant and its lenders is of the same type or nature as "labor disputes, strikes, fire, riot, war, terrorism, acts of God," which are listed in the Contract's force majeure clause. For example, the New York Court of Appeals held that a plaintiff's failure to obtain a liability insurance policy as required by the contract was not excused under similar beyond-the-control language in a force majeure provision where the plaintiff was unable to renew its insurance due to financial difficulties of the reinsurance company. *Id.* at 295-97, 297 n.* (construing a contract that excused nonperformance due to "labor disputes, inability to procure materials, failure of utility service, restrictive governmental laws or regulations, riots, insurrection, war, adverse weather, Acts of God, or other similar causes beyond the control of such party").

Second, the record evidence does not show that Defendant's failure to pay was due to causes beyond its control. The affidavit of Defendant's former Chief Revenue Officer states only that Defendant "informed Plaintiff that a dispute between [Defendant] and its lenders had caused a cash flow interruption." Defendant's memorandum of law (which is not evidence in any event) states that Defendant's "lenders assumed control of its accounts in early 2023," which disrupted Defendant's cash flow. Defendant has chosen not to disclose the nature or cause of the dispute or to explain why the lenders assumed control of Defendant's accounts and whether that cause was beyond Defendant's control. Defendant's abbreviated explanation for its non-

payment is insufficient to create an issue of fact that could excuse Defendant's nonpayment under the Contract's force majeure provision.

Third, even if Defendant's cash flow problems were considered a force majeure within the first sentence of the provision, the second sentence makes that defense unavailable to excuse Defendant's non-payment. That sentence states: "Notwithstanding the foregoing, this Section 25 shall not apply to Customer's responsibility to make payments due USA." Defendant argues that the reference to "this Section 25" in what is actually Section 27 unambiguously excuses any nonpayment because the force majeure provision applies and, because of the sentence's reference to Section 25 instead of Section 27, nonpayment is not excepted from the force majeure clause. The provision is unambiguous, but not in the way that Defendant argues. The provision is not "capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business." *See Flynn*, 120 F.4th at 1165. The reference to Section 25 instead of Section 27 is an obvious typographical error. The relevant language refers to "*this* Section 25." This section is the force majeure clause, and Section 25 (which dictates the manner of notice and communications between the parties) has no relevance to Defendant's payment obligations.

### v. Damages Mitigation

Finally, Defendant argues that Plaintiff failed to mitigate its damages by continuing to provide services while Defendant was in default. This argument fails because the undisputed evidence shows that Plaintiff acted reasonably and was not required to mitigate its damages further. "New York's courts adhere to the universally accepted principle that a harmed plaintiff

must mitigate damages." *Air Et Chaleur, S.A. v. Janeway*, 757 F.2d 489, 494 (2d Cir. 1985); *accord SuperCom, Ltd. v. Sabby Volatility Warrant Master Fund Ltd.*, 700 F. Supp. 3d 146, 158 (S.D.N.Y. 2023) (New York law). A party injured by a breach of contract "has a duty to minimize the damages and any award of damages should be reduced by any unnecessary increase in damages due to the failure of the plaintiff to avoid them." *SuperCom, Ltd.*, 700 F. Supp. 3d at 158; *see also White v. Farrell*, 987 N.E.2d 244, 252 (N.Y. 2013). The breaching party must demonstrate that the non-breaching party "unreasonably failed to minimize damages." *Fed. Ins. Co. v. Sabine Towing & Transp. Co.*, 783 F.2d 347, 350 (2d Cir. 1986); *accord SuperCom, Ltd.*, 700 F. Supp. 3d at 158. "[I]f the course of action chosen by the plaintiff was reasonable, the plaintiff can recover despite the existence of another reasonable course of action that would have avoided further damage." *Fed. Ins. Co.*, 783 F.2d at 350; *accord BOCA Aviation Ltd. v. AirBridgeCargo Airlines, LLC*, 669 F. Supp. 3d 204, 238 (S.D.N.Y. 2023).

Defendant has not introduced evidence from which a reasonable jury could conclude that Plaintiff's actions were unreasonable. Plaintiff's additional damages were incurred in negotiations during which Plaintiff agreed that it would continue to provide services. Defendant argues that this was unreasonable because the Contract authorized Plaintiff to cease performance as soon as the first default occurred. Defendant is correct that Plaintiff could have ceased performing and thereby limited its damages. However, it was not unreasonable for Plaintiff to continue to perform during negotiations in which, according to Defendant's former Chief Revenue Officer, Defendant made assurances that the cash flow interruption was causing a "likely inability to pay" only "in the near term." The same affiant also asserted that Defendant was "surprised and disappointed" when Plaintiff ceased providing services and that Defendant was harmed by this stoppage. Defendant cannot claim both that Plaintiff's continuing to provide

services was unreasonable and that its eventually stopping those services was unreasonable. Defendant has not introduced any evidence from which a reasonable jury could conclude that Plaintiff's continuing to provide services after Defendant's initial breach was an unreasonable failure to mitigate damages.

### C. Count Two: Account Stated

Summary judgment is granted on the account stated claim because no evidence in the record shows that Defendant ever disputed the amounts claimed in Plaintiff's invoices. An account stated claim "depends on the existence of some indebtedness between the parties, or an express agreement to treat the statement as an account stated." *Diesel Props S.r.l. v. Greystone Bus. Credit II LLC*, 631 F.3d 42, 54-55 (2d Cir. 2011) (New York law). An account stated claim requires "proof that a bill, even if unitemized, was issued to a client and held by the client without objection for an unreasonable period of time, and . . . the client's act of holding the statement without objection will be construed as acquiescence as to its correctness." *In re Lawrence*, 23 N.E.3d 965, 981 (N.Y. 2014); *see Locus Techs. v. Honeywell Int'l Inc.*, 632 F. Supp. 3d 341, 375 (S.D.N.Y. 2022) ("Under New York law, to allege a claim for account stated, a plaintiff must plead that: (1) an account was presented; (2) it was accepted as correct; and (3) debtor promised to pay the amount stated."); *OVES Enter., SRL v. NOWwith Ventures, Inc.*, No. 24 Civ. 3581, 2024 WL 4635399, at *4 (S.D.N.Y. Oct. 31, 2024) ("The second and third elements may be implied if a party receiving a statement of account keeps it without objecting to it within a reasonable time or if the debtor makes partial payment.").[2]

---

[2] Plaintiff's account stated claim is not duplicative of its breach of contract claim because the Contract provides for the award of attorneys' fees. "On a valid cause of action for account stated, a plaintiff is entitled to recover the amount due on the defendant's account. Recovery on such a claim does not ordinarily include an award for attorneys' fees." *NetJets Aviation, Inc. v. LHC Commc'ns, LLC*, 537 F.3d 168, 175 (2d Cir. 2008). Therefore, "when a party has both a

As described above, the evidence shows that Plaintiff presented Defendant with invoices, which Defendant did not dispute. Defendant received 279 invoices from Plaintiff, totaling $3,158,342.36. Defendant paid $2,454,260.75. Beginning in February 2023, Defendant failed to pay certain invoices, which then went into default. The evidence shows that Defendant never objected to the invoices in the manner required by the Contract or in any other manner. Plaintiff's motion includes an affidavit from its Chief Executive Officer, Matthew Kolinski, which states that he had multiple conversations and email exchanges with Defendant's Chief Executive Officer, Sean Mitchell, about the arrears, but Mitchell "never objected to any of [Plaintiff's] invoices or charges" and "never disputed [they] were owed in full." The discussions instead focused on terms under which Defendant would pay the arrears. Attached to Mr. Kolinski's affidavit are emails between the parties in which Mr. Mitchell does not dispute the invoices but instead focuses on creating a payment plan to satisfy the amount due.

Defendant has presented no evidence to suggest that Defendant objected, even orally, to the invoiced amounts. The affidavit of Defendant's former Chief Revenue Officer states only that the parties conducted "discussions throughout 2023 regarding the alleged non-payment claims in this present dispute" and "[a]s part of these discussions, [Defendant] informed Plaintiff that a dispute between [Defendant] and its lenders had caused a cash flow interruption." The record provides no basis to conclude that Defendant conveyed any objections to Plaintiff about the invoices. Plaintiff is entitled to summary judgment on its account stated claim.

---

claim for account stated and a claim under a contract that provides for an award of attorneys' fees, the claims for breach of contract and account stated are not duplicative." *Id.*; *accord Locus Techs.*, 632 F. Supp. 3d at 360.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment is **GRANTED**. A referral to Magistrate Judge Figueredo for an inquest on damages consistent with the Contract, including Sections 9 and 13, will issue separately.

The Clerk of Court is respectfully directed to close the motion at Dkt. No. 24.

Dated: January 29, 2025
New York, New York

**LORNA G. SCHOFIELD**
**UNITED STATES DISTRICT JUDGE**